UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

|  |  |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>DONALD WRAY RODGERS and THREE BRIDGES TRADING FUND, LLC,<br><br>　　　　　　　　Defendants. | Case No.:_____<br><br>ECF CASE<br><br>**COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF AND FOR CIVIL MONETARY PENALTIES UNDER THE COMMODITY EXCHANGE ACT AND COMMISSION REGULATIONS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Commodity Futures Trading Commission ("CFTC" or "Commission"), by and through its attorneys, alleges as follows:

## I.    SUMMARY

1.      From at least January 2022 through in or about November 2022 (the "Relevant Period"), Donald Wray Rodgers ("Rodgers"), individually and as agent and principal of Three Bridges Trading Fund, LLC ("Three Bridges") (collectively "Defendants"), operated a fraudulent scheme in which Defendants solicited and accepted funds for a pooled investment (the "TB Pool") in commodity futures contracts.

2.      Rodgers, as principal and agent of Three Bridges, knowingly or recklessly made fraudulent and material misrepresentations and omissions about his commodities trading and returns to persuade individuals ("Pool Participants") to transfer at least $2 million to Defendants for the purpose of participating in the TB Pool.  Through such solicitations, Defendants persuaded approximately 50 individuals to transfer money to Three Bridges.  Defendants sent

periodic account statements to the Pool Participants, which consistently but falsely represented profits from the trading of commodity futures contracts.

3.      Defendants misappropriated much of the money received from Pool Participants. Some pool funds were misappropriated for Three Bridges' benefit to pay certain Pool Participants either purported profits or withdrawals from funds deposited by other Pool Participants in the manner of a Ponzi scheme, rather than from trading profits as Defendants claimed.

4.      As trading profits failed to materialize, Defendants attempted to conceal their fraudulent scheme by issuing false account documents to Pool Participants:  first creating false account statements to convince Pool Participants that Three Bridges remained solvent, and later, creating false trade confirmations to wrongfully explain Three Bridges' loss of Pool Participants' funds.

5.      By virtue of this conduct and the conduct further described herein, Defendants have engaged, are engaging, or are about to engage in acts and practices in violation of anti-fraud Sections 4b(1)(A)-(C), 4*o*(1)(A)-(B), and 6(c)(1) of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 6b(1)(A)-(C), 6*o*(1)(A)-(B), 9(1), and Commission Regulation ("Regulation") 180.1(a) (1)-(3), 17 C.F.R. § 180.1(a)(1)-(3) (2023).  Furthermore, Defendants have violated Regulation 4.20(c), 17 C.F.R. § 4.20(a)(1), (b)-(c), which prohibits a commodity pool operator ('CPO") from failing to operate a commodity pool as a separate legal entity, failing to receive funds in the pool's name, and from commingling property of a pool it operates or intends to operate with property of another person.

6.      In addition to the above-described fraudulent conduct, Defendant Three Bridges made use of the mails or any means or instrumentality of interstate commerce and acted at all

times during the Relevant Period as a CPO by soliciting, accepting and/or receiving funds for a commodity pool without being registered with the Commission as a CPO, in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1).

7.      Similarly, Defendant Rodgers solicited funds for participation in a commodity pool for the purpose of trading commodity futures, while associated with Defendant Three Bridges as an officer, employee, or agent, without being registered with the Commission as an associated person ("AP") of Three Bridges, in violation of Section 4k(2) of the Act, 7 U.S.C. § 6k(2), and Regulation 3.12(a), 17 C.F.R. § 3.12(a) (2023).

8.      Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, the Commission brings this action to enjoin Defendants' unlawful acts and practices and to compel their compliance with the Act and the Regulations promulgated thereunder.  In addition, the Commission seeks civil monetary penalties and remedial ancillary relief, including, but not limited to, trading and registration bans, restitution, disgorgement, rescission, pre- and post-judgment interest, and such other and further relief as the Court may deem necessary or appropriate.

9.      Unless restrained and enjoined by this Court, Defendants will likely continue to engage in the acts and practices alleged in this Complaint and similar acts and practices, as described below.

## II.      JURISDICTION AND VENUE

10.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 (codifying federal question jurisdiction) and 28 U.S.C. §1345 (providing that U.S. district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress).  In addition, Section 6c of the Act, 7 U.S.C.

§ 13a-1, provides that the U.S. district courts have jurisdiction to entertain actions brought by the Commission for injunctive relief or to enforce compliance with the Act or any rule, regulation or order thereunder, whenever it shall appear to the Commission that a person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act, or any rule, regulation, or order thereunder.

11.     Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), because Defendants transact or transacted business in this District, and certain transactions, acts, practices, and courses of business alleged in this Complaint occurred, are occurring, or are about to occur in this District.  Specifically, several of the defrauded Pool Participants reside in and were solicited in this District, and Defendants' last known business and residential addresses are in this District.

### III.     THE PARTIES

12.     Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with the responsibility of administering and enforcing the provisions of the Act, 7 U.S.C. §§ 1-26, and the Commission's Regulations promulgated thereunder, 17 C.F.R. pts. 1-190 (2023).  The Commission maintains its principal office at 1155 21st Street N.W., Washington, DC 20581.

13.     Defendant **Donald Wray Rodgers** is a resident of Collierville, Tennessee. Rodgers is the Owner, President and Manager of Defendant Three Bridges, holding a 99.5% membership interest.  Rodgers has never been registered with the Commission in any capacity.

14.     Defendant **Three Bridges Trading Fund, LLC** was incorporated in Tennessee on or about April 8, 2022.  Three Bridges has never been registered with the Commission in any capacity.

## IV.   STATUTORY AND REGULATORY BACKGROUND

15.     A "commodity pool" is defined in Section 1a(10) of the Act, 7 U.S.C. § 1a(10), in relevant part, as any investment trust, syndicate, or similar form of enterprise operated for the purpose of trading in commodity interests, including commodity futures contracts.

16.     A "commodity pool operator" is defined in 7 U.S.C. § 1a(11)(A), in relevant part, as any person engaged in a business that is of the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts, or receives from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities, or otherwise, for the purpose of trading in commodity interests.

17.     An "associated person" of a commodity pool operator is defined in Regulation 1.3 (aa)(3), 17 C.F.R. 1.3 (aa)(3) (2023), in relevant part, as "a partner, officer, employee, consultant, or agent . . . in any capacity which involves . . . the solicitation of funds, securities, or property for a participation in a commodity pool."

18.     A "participant" in a commodity pool is defined in Regulation 4.10(c), 17 C.F.R. § 4.10(c) (2023), in relevant part, as any person who "has any direct financial interest in a pool."

19.     The operator of a commodity pool is prohibited by Regulation 4.20(c), 17 C.F.R. § 4.20(c) (2023), from commingling pool funds with the funds of any other person.

20.     With the exception of certain exemptions and exclusions, Section 4m(1) of the Act, 7 U.S.C. § 6m(1), makes it unlawful for any CPO to make use of the mails or any means or instrumentality of interstate commerce in connection with its business unless registered with the Commission.

21.     Among other exemptions to the requirement that CPOs must register with the Commission, Regulation 4.13(a)(2), 17 C.F.R. § 4.13(a)(2) (2023), provides that a CPO may claim exemption from registration if none of the commodity pools operated by the CPO has more than 15 participants at any time and the total gross capital contributions it receives do not total more than $400,000.

22.     Any person who desires to claim an exemption to the requirement that CPOs must register with the Commission, must file a notice of exemption from registration with the National Futures Association and must affirm on an annual basis the notice of exemption, Regulation 4.13(b), 17 C.F.R. § 4.13(b) (2023).

23.     Section 4k(2) of the Act, 7 U.S.C. § 6k(2), and Regulation 3.12(a), 17 C.F.R. § 3.12(a) (2023), requires an associated person of a CPO to register with the Commission and makes it unlawful for a CPO to permit such a person to become or remain associated with it in any such capacity if the CPO knew or should have known that such person was not so registered or that such registration had expired, been suspended or revoked.

**V.     FACTS**

**A.     Overview**

24.     During the Relevant Period, Defendants, acting as a CPO, fraudulently solicited and accepted at least $2 million from approximately 50 Pool Participants and pooled some of those funds for the purported purpose of trading, among other things, commodity futures contracts on the Pool Participants' behalf.  Defendants instructed Pool Participants to send their funds to one or more accounts controlled by Rodgers, including bank accounts held in the name of the Pool as well as his personal bank account, in which Rodgers commingled his personal funds with Pool Participant funds.  Defendants, through Rodgers, traded only a portion of the

Pool Participant funds in a Three Bridges account, yet Rodgers' trading resulted in extensive trading losses, and he misappropriated a substantial portion of the Pool Participant funds for his personal use, including for trading commodities in accounts under his own name.  In order to perpetuate and conceal his fraud, Rodgers distributed to Pool Participants fraudulent account documents that falsely reported the TB Pool's account value and trading, and made Ponzi-type payments to some Pool Participants.

**B.**     **Defendants Fraudulently Solicited Pool Participants**

25.     Rodgers incorporated Three Bridges Trading Fund, LLC on April 8, 2022 as a Tennessee company.  Rodgers served as President of Three Bridges, which listed the same address as Rodgers' personal home.

26.     During the Relevant Period, Defendant Rodgers solicited customers and managed Three Bridges from Collierville, Tennessee.

27.     In or about April 2022, Rodgers opened a bank account for Three Bridges (the "TB Operating Account") at a bank branch in Germantown, Tennessee, with Rodgers as the sole signatory.

28.     During the Relevant Period, Defendants fraudulently solicited customers by claiming to be running a successful commodity pool.  According to Defendants' records, they solicited and received at least $2,000,000 from approximately 50 Pool Participants for the purpose of trading S&P 500 E-mini futures contracts on behalf of the participants.  Some of these Pool Participants were Rodgers' acquaintances.

29.     Rodgers referenced his personal trading track record to persuade individuals to become Pool Participants in Three Bridges.  In one personal solicitation, Rodgers wrote to a potential Pool Participant in or about March 2022 that his "track record" showed "over 1850%

growth on [an] initial $3,000 investment," and attached a document that purported to show "every trade [Rodgers had] taken since 9/1/2020 through March 5th, [2022]."  Rodgers asked the potential Pool Participant, "[d]o you have any investment you have made that has grown that much?"

30.     The information provided by Rodgers was false, as records from Rodgers' personal trading accounts show that Rodgers had a lower balance in his trading account on March 5, 2022 than reflected in the attachment purporting to show his trading history.

31.     Rodgers also provided potential Pool Participants, generally by email, with descriptions of the fund.  One message, sent on or around March 31, 2022, included an attachment titled "Three Bridges Trading Fund," and described the TB Pool as "only trading S&P 500 Emini using Transact Futures Platform." That document described the "three missions of the investment fund" as:  "1) Twofold monthly income, 10% cash flow income from trading profits, 1% lifetime referral fee income; 2) Capital Growth; 3) 1% Charitable contributions from Investors Capital Growth to the charity of investors choice."

32.     Defendants also sought to assure potential Pool Participants about Three Bridges' trading, stating in one agreement provided to a potential customer that Three Bridges would "only trade with the trend of the market.  Market can trend up taking a long trade.  Market can trend down taking a short trade.  Trader will not trade against the trend."

33.     Defendants regularly represented that Three Bridges was a commodity pool.  In or around June 2022, Defendants informed Pool Participants by email that "Three Bridges Trading Fund is transitioning into a certified entity" and sought additional client information, including signed "Commodity Pool Participant Agreements" from Pool Participants. The Commodity Pool Participant Agreements, which were generally emailed to Pool Participants, stated that the client

would provide an investment in Three Bridges "in exchange for a proportional interest in the income and realized capital gains of the Pool."

34.     In an email sent to Pool Participants on or around October 21, 2022, Defendants explicitly represented that Three Bridges was a commodity pool operator:

> This is a description of what Three Bridges Trading Fund is:
>
> **We are set up as a commodity pool operator**

(emphasis added).  Rodgers continued:  "Yes, what we trade is a commodity not a stock or a mutual fund."

35.     The statements in paragraphs 33 and 34, including that the TB Pool was a "certified entity," were false and misleading, as Three Bridges was never registered as a commodity pool.

36.     In the same October 21, 2022 email, Defendants stated:

> After many discussions with the NFA, CME and the clearing broker taxes will be handled this way.  The Pool/fund will pay all the taxes on all the profits generated by the pool.  The Three Bridges Trading will reduce your individual account by your pro-rata share of the taxes that are paid.

37.     Rodgers' description of his alleged discussions with the National Futures Association (NFA), the self-regulatory organization that governs futures and other derivatives, implied that the TB Pool was regulated by NFA, and therefore appropriately registered, which gave Defendants a false appearance of legitimacy.

## C.     Defendants' Trading and Misrepresentation of Returns

38.     During the Relevant Period, Rodgers used futures trading accounts at least two futures commission merchants ("FCM") to trade funds provided by Pool Participants.  Beginning in April 2022, Rodgers opened trading accounts at one FCM on behalf of Three Bridges (the

"TB Trading Accounts"), which FCM records show were used to trade S&P 500 E-mini futures contracts between April 2022 and October 2022.  Rodgers deposited at least $1.29 million into these accounts from the TB Operating Account.

39.     Rodgers exclusively controlled, and was the sole authorized trader for, the TB Trading Accounts.

40.     Records from the TB Trading Accounts show that Rodgers caused the TB Pool to make trades in S&P 500 futures contract that resulted in large net losses.  Each monthly statement provided for the TB Trading Accounts between April 2022 and October 2022 reflected a net trading loss during that month.

41.     Despite the trading losses, Defendant Rodgers, on behalf of Three Bridges, sent or caused to be sent to Pool Participants via email regular reports touting Three Bridges' successful trading results.  These messages were narrative in form and provided an update on the purported performance of the TB Pool.

42.     These and other statements were false and misleading representations.  For example, on or around September 30, 2022, Rodgers sent an email to Pool Participants stating that the "Numbers for September" resulted in 42.75 "Total Points," and that "to calculate your gross profit the formula:  42.75 X 50 X number of contracts you are credited for the month." Contrary to this representation, bank records show that the TB Trading Accounts suffered trading losses of approximately $20,462.50 during the month of September 2022.

43.     In another email sent on or around October 31, 2022, Rodgers wrote to one Pool Participant, "Your original investment of 100k is now up to 457,280 heading into todays trading."  The bank statement for the TB Trading Accounts reflecting the period ending on

October 31, 2022, however, showed a total net liquidating value of $5,065.99 for the entire Three Bridges account.

44.     As in a typical Ponzi scheme, Rodgers, on behalf of Three Bridges, sent Pool Participants a check, generally by mail, of their purported profits at various intervals.  For example, on or around May 31, 2022, Rodgers, on behalf of Three Bridges, sent checks by mail to a number of Pool Participants, with the memo line reflecting the payment was for "May Trading Profits," which purported to be their portion of the profits earned for that month.  These checks contained the name and address of Three Bridges at the top and were drawn from the TB Operating Account.

45.     These checks did not reflect actual trading gains in the TB Trading Accounts, as bank records show the TB Trading Accounts lost over $491,347 during May 2022.

46.     If Pool Participants requested part or all of their principal, Rodgers also sent them a check for their withdrawal.  For as long as it appeared that Pool Participants were profiting, most maintained their principal in the "pool" which allowed Defendants to perpetuate their fraud.

**D.     Defendants' Commingling of Funds and Misappropriation**

47.     Defendants commingled funds of a commodity pool it operated with property of another person by depositing funds received from Pool Participants in a bank account in the name of Rodgers, which contained other funds, such as cash deposits.

48.     Despite incorporating Three Bridges on or around April 2022, Rodgers started soliciting and accepting funds from Pool Participants as early as January 2022.  During this period, funds from individuals intending to invest in the commodity pool were instead deposited and maintained in Rodgers' personal bank account.

49.     During the life of the pool, Defendants also misappropriated Pool Participant funds.

50.     Bank account records for Three Bridges show that Rodgers transferred money, including pool funds, from the Three Bridges bank account to his personal trading account (the "Rodgers Trading Account"), where Rodgers placed trades in his own name.  Bank records show that Rodgers transferred at least $235,000 in funds from Pool Participants into the Rodgers Trading Account on at least five occasions between June 14, 2022 and July 14, 2022.   Rodgers used the funds in the Rodgers Trading Account to continue trading S&P 500 e-mini futures contracts.  Upon information and belief, Rodgers did not disclose to Pool Participants that their funds would be moved to the Rodgers Trading Account.

51.     Additionally, Rodgers misappropriated Three Bridges funds for personal use, including, for example, making multiple payments from the TB Operating Account to a family member of Rodgers, who was not a Pool Participant, during the Relevant Period.

**E.**     **The Unraveling and Concealment through False Account Statements**

52.     In or around October 2022, Defendants' scheme began to unravel, with several Pool Participants seeking large withdrawals from the fund.  Upon information and belief, during the month of October 2022, Pool Participants requested $2.6 million in withdrawals.  Defendant Rodgers offered a series of excuses for delays in repayment, falsely representing that there were sufficient balances in Three Bridges' accounts, when in fact that TB Trading Account contained just over $106,000 at the beginning of October 2022.

53.     In an attempt to continue his fraudulent scheme, Rodgers circulated false documents purporting to be statements reflecting the TB Trading Accounts.

54.     On or around October 26, 2022, Rodgers sent certain Pool Participants a document purporting to be an account statement from the FCM for the TB Trading Accounts. The document, which appeared to include the FCM's header, stated that it was an "Account Summary as of 10/26/22" addressed to Three Bridges Trading Fund LLC, for the account ending in 3306. The proposed "Account Summary" listed a net liquidating value for the account of $5,015,750.00.

55.     These statements were false and misleading, as the FCM confirmed that this document was not created by the FCM and did not reflect the actual balance of the TB Trading Accounts. In reality, the TB Trading Accounts had a net liquidating value of only $65.99 on October 26, 2022.

56.     Although Three Bridges was largely out of funds, Defendants continued to solicit new Pool Participants. Between October 31, 2022 and November 8, 2022, Defendants were in receipt of nearly $400,000 from at least five different Pool Participants, several of whom were new to the TB Pool. These funds were deposited into the TB Operating Account.

57.     However, none of these funds were transferred to the TB Trading Accounts or used for the purchase or trading of any futures contracts. Instead, these funds were paid to other Pool Participants, including one Pool Participant who requested and received a $360,000 withdrawal in payments made between October 31, 2022 and November 9, 2022, in an effort to maintain Defendants' scheme.

58.     On or around November 10, 2022, Rodgers wrote to Pool Participants that "Three Bridges Trading had a major error and had to halt all trading at this time. We are also not able to receive or send out any money currently . . . ."

59.     Defendants continued to provide false information to Pool Participants to conceal

this fraudulent scheme.  Days later on November 15, 2022, Rodgers wrote by email to Pool

Participants, provided the following purported explanation:

> On Oct 21st I entered into a trade late in the afternoon.  I made a
> mistake on this trade.  I Left it unattended. . . . This wiped the
> fund out down to just under $5000.  I understand I should have told
> everyone that day.  But I did not and I am sorry.
>
> On the attachment the last trade on the 21st shows the entry
> position of 3740.5 and the first trade on the 24th is the exit position
> of 3802.75.  I was in a short position needing the market to go
> down.

60.     Defendant Rodgers' message attached a PDF document that included the FCM's

header and purported to be trade confirmations for transactions in the TB Trading Accounts on

October 21, 2022 and October 24, 2022.  These statements were false and misleading, as the

FCM confirmed that the document was not created by the FCM, but upon information and belief,

was created instead by Defendant Rodgers, and did not reflect actual trading within the TB

Trading Accounts.  In reality, the TB Trading Accounts appears to have made some small gains

on October 21, 2022.

61.     Throughout the Relevant Period, Defendants falsely and fraudulently represented

to Pool Participants that Defendants used Pool Participants' funds profitably to trade futures

contracts.  In various communications emailed to Pool Participants, including those detailed

above, Defendants represented that the TB Fund had profitably traded futures contracts.

62.     Defendants made the misrepresentations and omissions alleged herein

intentionally or recklessly and by use of the mails and/or other means or instrumentalities of

interstate commerce.

63.     To date, despite repeated requests to Rodgers for the return of their funds, most

Pool Participants have not received their funds back from the Defendants.

64.     To the extent some Pool Participants have received funds back from Defendants, those funds were misappropriated by Defendants from other Pool Participants, in the nature of a Ponzi scheme.

**E.     Three Bridges Acted as an Unregistered CPO, and Rodgers Acted as an Unregistered AP of a CPO**

65.     During the Relevant Period, Three Bridges, through Rodgers, acted as a CPO by engaging in a business that is of the nature of a commodity pool, and in connection therewith, soliciting, accepting and/or receiving funds for the purpose of trading in commodity futures. Furthermore, in connection with its business as a CPO, Three Bridges made use of the mails or other means of interstate commerce, which required registration as a CPO.

66.     During the Relevant Period, Rodgers acted in a capacity requiring registration as an AP of a CPO by soliciting customers and prospective customers for participation in a pooled investment vehicle, while being associated with Three Bridges as a partner, officer, employee, or similar agent.

67.     During the Relevant Period, Three Bridges was not registered with the Commission as a CPO and did not file a notice of exemption from registration or any annual affirmation of a notice of exemption with the National Futures Association, and Rodgers was not registered with the Commission as an AP of a CPO as required by the Act and Regulations.

**F.     Rodgers Was a Controlling Person of Three Bridges**

68.     Rodgers was a controlling person of Three Bridges.  Rodgers was the President and Manager and held a majority interest in Three Bridges, which allowed him to possess general control over Three Bridges.  Rodgers also exercised specific control over Three Bridges, as he was responsible for all trading at Three Bridges and was the primary source of information for Pool Participants regarding Three Bridges and their funds.

69.     Rodgers possessed the power to control the solicitation, receiving or accepting of funds for the purpose of purchasing or selling commodity interests, including S&P 500 futures subject to the rules of the CME, a designated contract market.

70.     Rodgers controlled the TB Operating Account, and, upon information and belief, was the sole signatory on the account, into which Pool Participants transferred funds for the purpose of trading futures.

**G.     Rodgers Acted as an Agent for Three Bridges**

71.     Through his solicitation of prospective and existing Pool Participants, his continued communication with Pool Participants regarding his purported trading success on behalf of Three Bridges, commingling pool funds by depositing them in his personal bank account which contained other funds, and misappropriating pool funds by paying funds to certain Pool Participants as purported futures trading profits from funds sent by other Pool Participants, Rodgers acted as an agent of Three Bridges.

## VI.     VIOLATIONS OF THE COMMODITY EXCHANGE ACT AND COMMISSION REGULATIONS

### COUNT ONE—AGAINST ALL DEFENDANTS

**Violations of Section 4b(1)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(1)(A)-(C)**
**(Fraud in Connection with Futures)**

72.     Paragraphs 1 through 70 are re-alleged and incorporated herein by reference.

73.     Section 4b(1)(A)-(C) of the Act, 7 U.S.C. § 6b(1)(A)-(C) makes it unlawful:

> [F]or any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person
>
>> (A) to cheat or defraud or attempt to cheat or defraud the other person;

(B) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record;

(C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for or, in the case of paragraph (2), with the other person[.]

74.     In or in connection with an order to make, or the making of, a contract of sale of a commodity in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person, Defendants Rodgers and Three Bridges:

a.   Knowingly or recklessly cheated or defrauded, or attempted to cheat or defraud Pool Participants by, among other things, making material misrepresentations and omissions regarding Defendants' trading performance, the value of their interests in the TB Pool, and by misappropriating their funds;

b.   Willfully made or cause to be made false reports or statements to Pool Participants; and/or

c.   Willfully deceived or attempted to deceive Pool Participants by, among other things, making material misrepresentations and omissions regarding Defendants' trading performance, the value of the TB Pool, and by misappropriating Pool Participants' funds.

75.     By reason of the foregoing, Defendants violated 7 U.S.C. § 6b(1)(A)-(C).

76.     The foregoing acts, omissions, and failures occurred within the scope of Rodgers' employment or office with Three Bridges. Therefore, Three Bridges is liable for his acts,

omissions, and failures in violation of 7 U.S.C. § 6b(a)(1)(A)-(C), pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. §2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2 (2023).

77.     Defendant Rodgers controlled Three Bridges directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, Three Bridges' conduct alleged in this Count. Therefore, under Section 13(b) of the Act, 7 U.S.C. § 13c(b), Rodgers is liable for Three Bridges' violations of 7 U.S.C. § 6b(a)(1)(A)-(C).

78.     Each fraudulent or deceptive act, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of 7 U.S.C. § 6b(a)(1)(A)-(C).

### **COUNT TWO—AGAINST ALL DEFENDANTS**

### **Violations of Section 4*o*(1)(A)-(B) of the Act, 7 U.S.C. § 6*o*(1)(A)-(B)**
### **(Fraud by a CPO and an Associated Person of a CPO)**

79.     Paragraphs 1 through 70 are re-alleged and incorporated herein by reference.

80.     7 U.S.C. § 6*o*(1) makes it unlawful for CPOs and APs of CPOs

> [B]y use of the mails or any other means or instrumentality of interstate commerce, directly or indirectly—(A) to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or (B) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

81.     As alleged herein, during the Relevant Period, Three Bridges, through Rodgers, acted as a CPO by operating, soliciting and accepting funds for a commodity pool for the purpose of trading commodity interests.

82.     Rodgers acted as an AP of a CPO by associating with Three Bridges, a CPO, as a partner, officer, employee, consultant, or agent in a capacity which involved the solicitation of funds, securities, or property for participation in a commodity pool.

83.     Three Bridges, through Rodgers, and Rodgers in his individual capacity, violated

7 U.S.C. § 6*o*(1)(A)-(B), in that by use of the mails in sending checks of purported profits to

Pool Participants, and other means or instrumentality of interstate commerce including emailing

Pool Participants fraudulent trading documents, they employed or are employing a device,

scheme, or artifice to defraud actual or prospective Pool Participants, or engaged or are engaging

in transactions, practices, or a course of business which operated or operates as a fraud]] or

deceit upon actual or prospective Pool Participants.

84.     During the Relevant Period, Defendants violated 7 U.S.C. § 6*o*(1)(A)-(B), by,

among other things:

> a.   Falsely claiming to Pool Participants that Rodgers ran a profitable commodity
>      pool;
>
> b.   Falsely reporting to Pool Participants that their funds were being used to trade
>      S&P 500 futures contracts;
>
> c.   Issuing false written account statements to Pool Participants and providing
>      Pool Participants false purported account documents to conceal why
>      Defendants had depleted Pool funds, as detailed above; and
>
> d.   Misappropriating Pool Participants' funds for Rodgers' personal benefit and
>      to pay other Pool Participants in the nature of a Ponzi scheme.

85.     Rodgers directly or indirectly controls Three Bridges, and did not act in good faith

or knowingly induced, directly or indirectly, Three Bridges' violations alleged in this Count, and

is thus liable for Three Bridges' violations pursuant to 7 U.S.C. § 13c(b).

86.     The foregoing acts, omissions and failures of Rodgers as alleged in this Count,

occurred and are occurring within the scope of his employment, office or agency with Three

Bridges; therefore, Three Bridges is liable for these acts, omissions and failures pursuant to 7 U.S.C. § 2(a)(1)(B) and Regulation 1.2.

87.     Each misrepresentation, omission of material fact, and misappropriation, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of 7 U.S.C. § 6*o*(1)(A)-(B).

### COUNT THREE—AGAINST ALL DEFENDANTS

**Violations of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1),
and Regulation 180.1(a)(1)-(3), 17 C.F.R. § 180.1(a)(1)-(3) (2023)
(Fraud by Deceptive Device or Contrivance)**

88.     Paragraphs 1 through 70 are re-alleged and incorporated herein by reference.

89.     7 U.S.C. § 9(1), makes it unlawful, in relevant part, for any person, directly or indirectly, to:

> [U]se or employ, or attempt to use or employ, in connection with any swap, or a contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, any manipulative or deceptive device or contrivance, in contravention of such rules and regulations as the Commission shall promulgate by not later than 1 year after [July 21, 2010, the date of enactment of the Dodd-Frank Wall Street Reform and Consumer Protection Act] . . . .

90.     17 C.F.R. § 180.1(a), provides, in relevant part:

> It shall be unlawful for any person, directly or indirectly, in connection with any swap, or contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, to intentionally or recklessly:

> (1) Use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud;

> (2) Make, or attempt to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading;

> (3) Engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person . . . .

91.     During the Relevant Period, as described above, Defendants have violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1)-(3) by, among other things, in connection with swaps, contracts of sale of commodities in interstate commerce, or for future delivery, making or attempting to make untrue or misleading statements of material fact or omitting to state or attempting to omit material facts necessary in order to make statements made not untrue or misleading, such as the following:

 a.  Falsely claiming to Pool Participants that Rodgers ran a profitable commodity pool;

 b.  Misappropriating Pool Participants' funds for Rogers' personal benefit and to pay other Pool Participants in the nature of a Ponzi scheme;

 c.  Issuing false written account statements to Pool Participants and providing Pool Participants false purported account documents to conceal why Defendants had depleted Pool funds, as detailed above; and

 d.  Falsely reporting to Pool Participants that their funds were being used to trade S&P 500 futures contracts.

92.     Each and every misrepresentation or omission by Defendants, including but not limited to those specifically alleged herein, has been made willfully, intentionally or recklessly.

93.     By this conduct, Defendants violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1)-(3).

94.     Rodgers directly or indirectly controls Three Bridges, and did not act in good faith or knowingly induced, directly or indirectly, Three Bridges' violations alleged in this Count, and is thus liable for Three Bridges' violations pursuant to 7 U.S.C. § 13c(b).

95.     The foregoing acts, omissions and failures of Rodgers as alleged in this Count,

occurred and are occurring within the scope of his employment, office or agency with Three

Bridges; therefore, Three Bridges is liable for these acts, omissions and failures pursuant to

7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2 (2023).

96.  Each misrepresentation, omission of material fact, and misappropriation,

including but not limited to those specifically alleged herein, is alleged as a separate and distinct

violation of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1)-(3).

## COUNT FOUR—AGAINST DEFENDANT THREE BRIDGES

### Violations of Section 4m(1) of the Act, 7 U.S.C. 6m(1)
### (Failure to Register as a CPO)

97.  Paragraphs 1 through 70 are re-alleged and incorporated herein by reference.

98.  Three Bridges acted as a CPO and made use of the mails or any means or

instrumentality of interstate commerce in connection with its business as a CPO by engaging in a

business that is of the nature of a commodity pool, and, in connection therewith, soliciting,

accepting and/or receiving funds from others for a pooled investment vehicle that engages in

commodity futures transactions.  Three Bridges engaged in this conduct without being registered

with the Commission as a CPO in violation of 7 U.S.C. §6m(1).  In the event that Three Bridges

was eligible for an exemption from registration under Commission regulations, Three Bridges

failed to claim such exemption from registration with the National Futures Association.

99.  Rodgers directly or indirectly controls Three Bridges, and did not act in good faith

or knowingly induced, directly or indirectly, Three Bridges' violations alleged in this Count, and

is thus liable for its violations pursuant to 7 U.S.C. § 13c(b).

## COUNT FIVE—AGAINST ALL DEFENDANTS

### Violations of Section 4k(2) of the Act, 7 U.S.C. § 6k(2), and Regulation 3.12(a), 17 C.F.R.
### § 3.12(a) (2023)
### (Failure to Register as an AP of a CPO)

100.    Paragraphs 1 through 70 are re-alleged and incorporated herein by reference.

101.    During the Relevant Period, Defendant Rodgers acted as an associated person of a CPO by soliciting funds, securities, or property for the Three Bridges commodity pool.  Rodgers engaged in this conduct without being registered with the Commission as an AP of CPO Three Bridges, in violation of 7 U.S.C. § 6k(2) and 17 C.F.R. § 3.12(a).

102.   During the Relevant Period, Defendant Three Bridges knew or should have known that Rodgers was not registered with the Commission as an associated person of Three Bridges, and yet allowed Rodgers to become or remain associated with Three Bridges as a partner, officer, employee and/or agent in a capacity that involved the solicitation of funds, securities or property for a participation in a commodity pool in violation of 7 U.S.C. § 6k(2).

103.    The foregoing acts, omissions and failures of Rodgers as alleged in this Count, occurred and are occurring within the scope of his employment, office or agency with Three Bridges; therefore, Three Bridges is liable for these acts, omissions and failures pursuant to 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2.

## **COUNT SIX – AGAINST ALL DEFENDANTS**

### **Violations of Regulation 4.20(a)-(c), 17 C.F.R. § 4.20(a)(1), (b), (c) (2023)**
**(Failure to Operate Commodity Pool as a Separate Legal Entity, Failure to Receive Funds in the Pool's Name, and Commingling of Pool Funds)**

104.    Paragraphs 1 through 70 are re-alleged and incorporated herein by reference.

105.    17 C.F.R. § 4.20(a)(1) provides that a CPO, whether registered or not, to operate its commodity pool as a legal entity separate from that of the CPO.

106.    17 C.F.R. § 4.20(b) prohibits a CPO, whether registered or not, from receiving pool funds in any name other than that of the pool.

107.    17 C.F.R. § 4.20(c) prohibits a CPO, whether registered or not, from comingling the property of any pool it operates with the property of any other person.

108.    During the Relevant Period, Defendants, while acting as an unregistered CPO, violated 17 C.F.R. § 4.20(a)(1), (b) and (c) (2023) by:  (i) failing to operate the Pool as a legal entity separate from Rodgers; (ii) failing to receive all Pool Participant funds in the Pool's name; and (iii) commingling Pool Participant funds with non-Pool assets when it deposited Pool funds into Rodgers' personal bank account.

109.    Each act of failing to operate the Pool as a legal entity separate from that of the CPO, improperly receiving Pool Participant funds, and commingling Pool assets with non-Pool assets, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of 17 C.F.R. § 4.20(a)(1), (b), and/or (c)(2023).

110.    Rodgers directly or indirectly controls Three Bridges, and did not act in good faith or knowingly induced, directly or indirectly, Three Bridges' violations alleged in this Count, and is thus liable for Three Bridges' violations pursuant to 7 U.S.C. § 13c(b).

## VII.    RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1, and pursuant to its own equitable powers:

A.    Enter an order finding that Defendants Rodgers and Three Bridges violated Sections 4b(1)(A)-(C), 4*o*(1)(A)-(B), 6(c)(1), 4k(2), and 4m(1) of the Act, 7 U.S.C. §§ 6b(1)(A)-(C), 6*o*(1)(A)-(B), 9(1), 6k(2), 6m(1), and Regulations 180.1(a)(1)-(3), 3.12(a) and 4.20(a)-(c), 17 C.F.R. §§ 180.1(a)(1)-(3), 3.12(a), 4.20(a)(1), (b), and (c) (2023);

B.    Enter an order of permanent injunction restraining, enjoining and prohibiting Defendants Rodgers and Three Bridges, and their affiliates, agents, servants, employees,

successors, assigns, attorneys, and all persons or entities in active concert with them, who receive actual notice of such order by personal service or otherwise, from engaging in the conduct described above, in violation of 7 U.S.C. §§ 6b(1)(A)-(C), 6*o*(1)(A)-(B), 9(1), 6k(2), and 6m(1), and 17 C.F.R. §§ 180.1(a)(1)-(3), 3.12(a), and 4.20(a)(1), (b)-(c) (2023);

C.      Enter an order of permanent injunction restraining, enjoining and prohibiting Defendants Rodgers and Three Bridges, and their affiliates, agents, servants, employees, successors, assigns, attorneys, and all persons or entities in active concert with them, who receive actual notice of such order by personal service or otherwise, from, directly or indirectly:

1.  Trading on or subject to the rules of any registered entity (as that term is defined by Section 1a(40) of the Act, 7 U.S.C. § 1a(40));

2.  Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2023)), for accounts held in the name of any Defendant or for accounts in which any Defendant has a direct or indirect interest;

3.  Having any commodity interests traded on any Defendants' behalf;

4.  Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

5.  Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling of any commodity interests;

6.  Applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration

or exemption from registration with the CFTC except as provided for in Regulation 4.14(a) (9), 17 C.F.R. § 4.14(a) (9) (2023); and

7. Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. §3.1(a) (2023)), agent, or any other officer or employee of any person registered, exempted from registration, or required to be registered with the CFTC except as provided for in Regulation 4.14(a)(9).

D.     Enter an order requiring Defendants, as well as any third-party transferee and/or successors thereof, to disgorge, pursuant to such procedure as the Court may order, all benefits received including, but not limited to, salaries, commissions, loans, fees, revenues, and trading profits derived directly or indirectly, from acts or practices which constitute violations of the Act and Regulations as described herein, including pre-judgment interest thereon from the date of such violations, plus post-judgment interest.

E.     Enter an order requiring Defendants, as well as any successors thereof, to make full restitution, pursuant to such procedure as the Court may order, to every person or entity who sustained losses proximately caused by Defendants' violations, including pre-judgment and post-judgment interest.

F.     Enter an order directing Defendants and any of their successors, to rescind, pursuant to such procedures as the Court may order, all contracts and agreements, whether implied or express, entered into between, with or among Defendants and any of the clients whose funds were received by them as a result of the acts and practices which constituted violations of the Act and Regulations as described herein.

G.     Enter an order requiring each Defendant to pay a civil monetary penalty under the Act, to be assessed by the Court, in an amount not to exceed the penalty described by Section

6c(d)(1) of the Act, 7 U.S.C. §13a-1(d)(1), as adjusted for inflation pursuant to the Federal Civil

Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. 114-74, Tit. VII, §701,

129 Stat. 584, 599-600, *see* Regulation 143.8, 17 C.F.R. §143.8 (2023), for each violation of the

Act and Regulations, as described herein.

   H. Enter an order requiring Defendants to pay costs and fees as permitted by

28 U.S.C. §§ 1920 and 2413(a)(2).

   I. Enter an order providing such other and further relief as this Court may deem

necessary and appropriate under the circumstances.

## VIII. <u>JURY DEMAND</u>

  Plaintiff hereby demands a trial by jury.

Dated: June 6, 2024

    New York, N.Y.       Respectfully submitted,


                 <u>/s/ Nicole L. Buseman</u>
                 Nicole L. Buseman
                 NY Bar # 5119193
                 nbuseman@cftc.gov
                 Trial Attorney

                 K. Brent Tomer
                 NY Bar #4404489
                 ktomer@cftc.gov
                 Chief Trial Attorney

                 Manal M. Sultan
                 msultan@cftc.gov
                 Deputy Director

                 Commodity Futures Trading Commission
                 290 Broadway, 6th floor
                 New York, NY 10007
                 (646) 746-9700
                 (646) 746-9888 (facsimile)